IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| GENERAL M. DUFF, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 6:11-cv-34 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff General M. Duff, Jr. ("Duff") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding him not disabled and therefore ineligible for both supplemental security income, ("SSI"), and disability insurance benefits, ("DIB"), under the Social Security Act, ("Act"), 42 U.S.C. §§ 1614(a)(3)(A); 1381-1383f.

Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda and argument of counsel and the applicable law, and conclude that evidence submitted after the decision of the Administrative Law Judge ("ALJ") is new, material, and should be considered by the ALJ. As such, I **RECOMMEND DENYING** the Commissioner's motion for summary judgment (Dkt. # 15), **GRANTING IN PART** Duff's motion for summary judgment (Dkt. # 13), and reversing and remanding this case for further administrative consideration consistent with this Report and Recommendation.

# STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Duff failed to demonstrate that he was disabled under the Act. Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Duff bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)(2006)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education and work experience. See 42 U.S.C. §§ 423(d)(2) and 1382c(a)(3)(B).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the

2

claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Duff was born on March 1, 1965 (Administrative Record, hereinafter "R." 111) and is considered a younger individual under the Act. 20 C.F.R. §§ 404.1563(c), 416.963(c)(2011). Duff's date last insured is June 30, 2009, and thus, he must show that his disability began before that date, and existed for twelve continuous months to receive DIB benefits. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a). To receive SSI benefits, Duff must establish that his disability began on or after the date that he applied for benefits. 42 U.S.C. § 1383(a)(1); 20 C.F.R § 416.501.

Duff is unmarried and has no children. He lives with his aunt and has never lived alone. (R. 32.) Duff was hit in the head with a bat when he was young, and testified that it "kind of

3

claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Duff was born on March 1, 1965 (Administrative Record, hereinafter "R." 111) and is considered a younger individual under the Act. 20 C.F.R. §§ 404.1563(c), 416.963(c)(2011). Duff's date last insured is June 30, 2009, and thus, he must show that his disability began before that date, and existed for twelve continuous months to receive DIB benefits. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a). To receive SSI benefits, Duff must establish that his disability began on or after the date that he applied for benefits. 42 U.S.C. § 1383(a)(1); 20 C.F.R § 416.501.

Duff is unmarried and has no children. He lives with his aunt and has never lived alone. (R. 32.) Duff was hit in the head with a bat when he was young, and testified that it "kind of

messed [him] up a bit." (R. 38, 45.) Duff's sister, Rebecca Mason, testified that she helps him complete paperwork, and that Duff cannot take care of himself or live on his own. (R. 46.) Duff completed the 11th grade in school, and according to school records, he was not in special education, although his aptitude test scores were very low, averaging around the ninth percentile. (R. 47, 196-203.) Duff testified that he can read "a little," pay bills and make change. (R. 32, 158.) He has never had a driver's license. (R. 38.) Duff was previously employed at a sawmill, which involved operating equipment, including a land chipper. (R. 33.) Duff stopped working in May 2005, due to a heart attack. (R. 146.)

## Claim History

On December 16, 2008, Duff protectively filed for SSI and DIB, claiming that his disability began on November 18, 2008, due to complications from a heart attack, shortness of breath and blood clots. (R. 111, 146.) The state agency denied Duff's disability application at the initial and reconsideration levels of administrative review. (R. 56, 66.) On August 5, 2010, ALJ Charles Boyer held a hearing to consider Duff's disability claim. (R. 30.) Duff was represented by counsel at the hearing, which included testimony from Duff, his sister, Rebecca Mason, and vocational expert Barry Hensley, Ed.D., who is licensed as a school psychologist by the Virginia School Board of Psychology. (R. 30-51.) At the hearing, Hensley reviewed Duff's standardized test records and found that they appeared to fall in the borderline IQ range, between 70 and 85. (R. 48, 108.) Dr. Hensley also testified that Duff had a below eighth grade education level. (R. 49.)

At the hearing, the ALJ asked Dr. Hensley to identify jobs that could be performed by an individual who had a limited (below eighth grade level) education and who could perform the

4

range of sedentary work specified by the state agency physician. (R. 48-50, 217-18.) Based on that hypothetical, Dr. Hensley identified jobs that Duff could perform, including assembler and packager. (R. 50.)

On September 15, 2010, the ALJ entered his decision denying Duff's claims for DIB and SSI. (R. 14-26.) The ALJ focused on Duff's heart problems, the primary disabling condition asserted at this stage of the proceedings. The ALJ found that Duff's coronary artery disease and cardiomyopathy were severe impairments. Considering these impairments, the ALJ found that Duff retained the RFC to perform a range of sedentary work. Specifically, he found that Duff can lift 20 lbs occasionally and 10 lbs frequently. He can stand/walk for four hours and sit for six hours in an eight hour work day. He can never crawl, and occasionally kneel, crouch, or climb ladders, ropes, and scaffolds. He must avoid concentrated exposure to hazards and be given a sit/stand option. (R. 17.) The ALJ determined that Duff cannot perform his past relevant work. However, given the evidence obtained from the vocational expert at the administrative hearing, the ALJ found that Duff can perform work, such as assembler and hand packager, which exist in significant numbers in the national economy. (R. 21.) The ALJ considered Duff's limitations only as related to his cardiac problems. Duff offered no medical evidence of any other physical or mental limitations causing or contributing to the disability claim.

After the ALJ's decision, Duff submitted three additional records to the Appeals Council: 1) an evaluation from E. Wayne Sloop, Ph.D. dated October 18, 2010; 2) a letter from his attorney dated November 4, 2010; and 3) a letter from his attorney dated January 19, 2011. On July 27, 2011, the Appeals Council made the additional evidence part of the record, but found

that it did not provide a basis for changing the ALJ's decision, and denied Duff's request for review. (R. 1-4.) This appeal followed.

## ANALYSIS

Duff argues that the Appeals Council erred by failing to substantively review the new evidence submitted after the hearing. Duff also argues that if the additional evidence is properly considered, it establishes that Duff meets Listing 12.05 for mental retardation. Duff does not take issue with the ALJ's decision with regard to the findings involving his heart condition or other physical impairments; rather, the sole issue before this court is whether the additional evidence submitted after the hearing demonstrates that Duff suffers from a disabling mental impairment. After a careful review of the record as a whole, the court finds that the additional evidence is new, material, and relevant, and thus it is appropriate to remand this case to the Commissioner to consider the evidence under sentence four of 42 U.S.C. § 405(g).

Duff submitted to the Appeals Council a psychological evaluation performed on October 13, 2010 by E. Wayne Sloop, Ph.D. ("Dr. Sloop's report). (R. 321-326.) Dr. Sloop's report included the administration of psychological testing and an intellectual evaluation with mental status examination. (R. 321-326.) Dr. Sloop diagnosed Duff with Cognitive Disorder NOS, and found that Duff falls within the mild mental retardation range, with a full scale IQ of 67. (R. 325.) Dr. Sloop found that Duff's "[o]verall intellectual functioning is within the range of mild mental retardation but without evidence to indicate he was identified as mentally retarded during his developmental years, a diagnosis of mental retardation cannot be made." (R. 325.) Dr. Sloop further noted that "there is no evidence to suggest that [Duff] was identified as mentally retarded during his developmental years though school records obviously indicate a lower level

6

of intellectual functioning." (R. 325.) With regard to Duff's functional abilities, Dr. Sloop stated that Duff can "possibly perform simple and repetitive tasks but would do so slowly. He could attend work regularly if someone transported him, assisted him in getting up and going, reminded him that it was a work day, and ensured that he arrived at work on time. He seems able to perform simple work activities without close or special supervision." (R. 326.)

Duff first argues that the Appeals Council failed to perform its legal duty to substantively review Dr. Sloop's report on the record. The Appeals Council considered the additional evidence submitted by Duff, and "found that this information [did] not provide a basis for changing the Administrative Law Judge's decision." (R. 1.) When deciding whether to grant review, the Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991.) Evidence is new if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Id. The Appeals Council was not, however, required to provide express, specific findings on the record regarding the additional evidence submitted by Duff. As the Fourth Circuit clarified in Meyer v. Astrue, 662 F.3d 700, 705 (4th Cir. 2011), "nothing in the Social Security Act or the regulations promulgated pursuant to it requires that the Appeals Council explain its rationale for denying review." In this case, the Appeals Council's consideration of the additional evidence submitted by Duff and denial of review met its obligations under the agency's regulations.

When the Appeals Council denied Duff's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. When determining whether

7

substantial evidence supports the Commissioner's decision, the court must review the record as a whole, including the new evidence incorporated into the administrative record by the Appeals Council. Wilkins, 953 F.2d at 96. Thus, the court must review the record as a whole, including Dr. Sloop's report, to determine if substantial evidence supports the Commissioner's decision, or if Dr. Sloop's report is new, material evidence that relates to the period in question, and thus should be considered by the Commissioner on remand.

Dr. Sloop's report deals with Duff's overall cognitive ability and IQ. In the absence of evidence that Duff's IQ score has changed, it may be assumed that his scores have remained relatively constant throughout his life. See Luckey v. U.S. Dep't of Health & Human Servs., 890 F.2d 666, 668 (4th Cir. 1989.) Thus, Dr. Sloop's report relates to the alleged period of disability in question. Dr. Sloop's evaluation also constitutes "new" evidence. There is no other IQ testing contained in the record. The only evidence before the ALJ with regard to Duff's mental abilities was Duff's testimony, his school records, and the vocational expert's testimony that Duff had a "borderline IQ" of between 70-85, and a below eighth grade level education. The vocational expert's testimony was based on Duff's school records and testimony at the hearing, not on an examination of Duff. Dr. Sloop's evaluation is based upon a mental status examination and intellectual assessment of Duff performed by Dr. Sloop, and is a considerably more thorough analysis of Duff's cognitive abilities. Thus, Dr. Sloop's evaluation is not duplicative or cumulative of the evidence in the record, and constitutes new evidence.

The remaining issue is whether Dr. Sloop's report is material; that is, whether there is a reasonable possibility that the evidence would have changed the ALJ's decision. Wilkins, 953 F.2d at 96. For the reasons set forth below, I find that there is a reasonable possibility that Dr.

Sloop's opinion would have changed the ALJ's decision, and thus, that it is proper to remand the case to the Commissioner for consideration of Dr. Sloop's October 18, 2010 report.

Duff argues that Dr. Sloop's report establishes that he meets Listing 12.05 for mental retardation. The Listings describe limited circumstances in which a claimant's impairment is so severe that the individual is categorically deemed disabled without further inquiry. Duff has the burden of proving that his impairments meet the criteria of the Listing. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993).

Listing § 12.05 requires a threshold showing of, "deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22" ("Prong 1"). 20 C.F.R. § 404, Subpart P, App.1, § 12.05, Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012). Listing 12.05 also requires the satisfaction of one of four additional requirements identified as Requirements A-D. At issue in this case is Requirement C, which requires, "[a] valid verbal, performance, or full scale IQ of 60-70" ("Prong 2") and a physical or other mental impairment imposing an additional and significant work-related limitation of function" ("Prong 3"). 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05C. If Duff satisfies all three prongs, he meets Listing 12.05C.

Dr. Sloop's report establishes that Duff's IQ scores are within the 60-70 range as required for Prong 2. Duff also satisfied Prong 3, the presence of a "physical or other mental impairment imposing an additional and significant work-related limitation of function."[1] 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05C. See Jackson v. Astrue, 467 Fed.Appx. 214, 217 (W.D.Va.

---

[1] The ALJ determined that Duff suffers from severe impairments of coronary artery disease and cardiomyopathy and gave Duff an RFC of less than full range of sedentary work. (R.16-17.)

9

2012)(Severe impairments of depression and diminished intellectual function meet Prong 3 of Listing 12.05C); Hill v. Astrue, 2010 WL 5419989, *12 (W.D.Va. Dec. 27, 2010)(accepted by 2011 WL 195611 (W.D.Va. Jan. 19, 2011))(Severe impairments of type II diabetes mellitus, abdominal and pelvic pain, obesity, reflux disease and hypertension meet Prong 3 of Listing 12.05C); Powell v. Barnhart, 2005 WL 1926613, *5 (W.D.Va. Aug. 9, 2005)(Plaintiff limited to sedentary work meets Prong 3 of Listing 12.05C). The remaining issue is whether Duff satisfies Prong 1- showing deficits in adaptive functioning initially manifested prior to age 22.

"While 'intellectual functioning' is determined by standardized intellectual quotient (or "IQ") testing, '[a]daptive functioning refers to how effectively an individual copes with common life demands and how well [he] meets the standards of personal independence expected of someone in [his] particular group, sociocultural background, and community setting.'" Salmons v. Astrue, 2012 WL 1884485, *2 (W.D.N.C. May 23, 2012)(citing Caldwell v. Astrue, 2011 WL 4945959, *3 (W.D.N.C. October 18, 2011)(quoting Diagnostic and Statistical Manual of Mental Disorders ("DSM") (4th ed. text rev. 2007)). The Commissioner's regulations note that adaptive activities of daily living include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. § 404, Subpart P, App.1, § 12.00C(1).

Duff has the burden of proving a deficiency in adaptive functioning during his developmental years. Hancock, 667 F.3d at 476 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). Although it is assumed that Duff's IQ score was constant throughout his life, and thus was in the range of 67 before he turned 22, an IQ score, in the context of all of the evidence,

is not enough to prove deficits in adaptive functioning indicative of mental retardation. See Dearry v. Astrue, 2012 WL 1165332, *5 (W.D.Va. April 9, 2012)(citing Moon v. Astrue, 2009 WL 430434, *7-8 (W.D.Va. Feb. 20, 2009)(accepted by 2009 WL 650390, *1 (W.D.Va. March 11, 2009)).

The only other evidence with regard to Duff's adaptive functioning prior to age 22 is the testimony of Duff and his sister at the administrative hearing, and his school records. Duff testified at the hearing that he never lived alone, can read a little (R. 32), never had a driver's license (R. 38), and was hit in the head with a bat when he was young, which "messed [him] up a little bit" (R. 38). His sister testified that she does all of Duff's paperwork, and that he is unable to live on his own and take care of himself. (R. 46.) Duff's school records do not indicate that he was placed in special education. (R. 196-203.) However, Dr. Sloop noted that Duff's school records "obviously indicate a lower level of intellectual functioning." (R. 325.) The vocational expert also noted that Duff's aptitude test scores were low, in the ninth percentile overall. (R. 48.)

A claimant's past work experience may also be relevant to the consideration of his level of adaptive functioning. See Hancock, 667 F.3d at 475-76. Duff reported that, from approximately age 25 until the alleged onset of his physical impairments, he worked as a machine operator in a sawmill, operating different equipment. (R. 33, 41-42.)

Reviewing similar cases from this circuit in which claimants are found to meet Listing 12.05, it appears that the facts set forth above may establish that Duff has deficits in adaptive functioning, which were present prior to age 22. See Hairston v. Astrue, 2012 WL 1016127, *2-3 (W.D.Va. March 26, 2012)( accepted by 2012 WL 5471964, *5 (W.D.Va. April 26,

11

2012))(case remanded to Commissioner to consider whether plaintiff had deficits in adaptive functioning prior to age 22 where new evidence showed that plaintiff's IQ score was 68 or less prior to age 22.); Conyers v. Astrue, 2012 WL 3282329 (E.D.N.C. June 29, 2012)(claimant meets Listing 12.05 where her full scale IQ score is 52, she is illiterate, she had special education classes in school and was diagnosed by doctor to be mildly mentally retarded; even though she lives independently, performs chores, pays bills, works and maintains a family.); Holtsclaw v. Astrue, 2011 WL 6935499, *6 (W.D.N.C. Dec. 30, 2011)(substantial evidence did not support Commissioner's finding that plaintiff did not have deficits in adaptive functioning before age 22 where plaintiff had full scale IQ of 59, was in special education classes, had learning disability and poor academic performance, was illiterate, dropped out of school in 11th grade, never lived independently, and required help to complete disability application forms.); Watson v. Astrue, 729 F.Supp.2d 786, 788-89 (E.D.N.C. 2010)(ALJ's finding that claimant's deficits in adaptive functioning did not manifest before age 22 not supported by substantial evidence where claimant had full scale IQ score of 52, could read and perform arithmetic on a second grade level and spell on a first grade level, and was found by a doctor to meet the definition of mental retardation.). But see Hancock, 667 F.3d at 475-76 (plaintiff did not have deficits in adaptive functioning where ALJ found that plaintiff previously worked semi-skilled jobs, has ability to shop, pay bills, and make change, cares for three small grandchildren at a level of care that satisfies the Department of Social Services, does the majority of her household's chores, attends school to obtain a GED, and does puzzles for entertainment.); Dearry v. Astrue, 2012 WL 1165332, *5 (W.D.Va. April 9, 2012)(plaintiff did not meet Listing 12.05 where IQ score of 66, takes care of three children, manages benefits of disabled children, works

12

around the house, shops, socializes with family members, is financially independent, can read and write relatively well, and has a driver's license.); Goelling v. Astrue, 2010 WL 3733538, *4 (W.D.Va. Aug. 30, 2010)(plaintiff did not have deficits in adaptive functioning prior to age 22 where early school records reveal normal grades and behaviors, and no difficulty reading or writing.)

Given the facts and case law set forth above, there is a reasonable possibility that, considering Dr. Sloop's evaluation, the ALJ could find that Duff satisfies the three prongs of Listing 12.05C. Thus, I find that Dr. Sloop's report is material and should be considered by the ALJ. This case is similar to Meyer v. Astrue, where the Fourth Circuit remanded the case to the ALJ for further fact finding. In Meyer, the ALJ denied plaintiff's claim, noting that the record lacked restrictions placed on the plaintiff by a treating physician. The plaintiff subsequently obtained that evidence from his treating physician and submitted it to the Appeals Council. The Appeals Council made the evidence a part of the record, but denied review. The Court remanded the case to the Commissioner with instructions that the ALJ consider the new evidence stating, "[o]n consideration of the record as a whole, we simply cannot determine whether substantial evidence supports the ALJ's denial of benefits here….no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record. Assessing the probative value of competing evidence is quintessentially the role of the fact finder….Therefore, we must remand the case for further fact finding." 662 F.3d 700, 707 (4th Cir. 2011). See also Salmons v. Astrue, 2012 WL 1884485 (W.D.N.C. May 23, 2012)(Remand to Commissioner under sentence four to consider whether

13

Case 6:11-cv-00034-NKM-RSB   Document 21   Filed 12/13/12   Page 13 of 15   Pageid#: 401

plaintiff had deficits in adaptive functioning prior to age 22 because it is role of ALJ, not court, to weigh inconsistent evidence regarding plaintiff's intellectual functioning.)

Similarly in this case, no fact finder has made any findings as to Dr. Sloop's report. The ALJ did not have the benefit of Dr. Sloop's evaluation when determining whether Duff met a listing or in formulating his RFC. The Commissioner correctly notes that the ALJ did consider Duff's cognitive function by examining his school records, and obtaining the vocational expert's opinion as to Duff's IQ range and educational level. Given the information in the record before the ALJ at the time of his decision, his decision may have been supported by substantial evidence. However, the new evidence from Dr. Sloop presented to the Appeals Council is new, relevant, and material evidence that may well change the ALJ's prior decision, and thus should be considered by the Commissioner. By making this finding, the court does not suggest that these records conclusively establish disability. Indeed, this evidence ultimately may not have any bearing on the ALJ's RFC assessment or the Commissioner's disability determination. "The duty to resolve conflicts in the evidence rests with the ALJ, not with the reviewing court." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)(citing Kasey v. Sullivan, 3 F.3d 75, 79 (4th Cir. 1993)). Rather, the court is charged with reviewing the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Wilkins, 953 F.2d at 96. The court finds that a reasonable probability exists that the ALJ may reach a different conclusion upon consideration of the record as a whole, including Dr. Sloop's report. Accordingly, I recommend that the defendant's motion for summary judgment be **DENIED**, Duff's motion for summary judgment be **GRANTED IN PART**, and this case be

14

**REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g) with instructions to consider Dr. Sloop's October 18, 2010 report.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: December 13, 2012

/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge